**WO**                                                                                           JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adrian Crihalmean, | No. CV 11-1328-PHX-JAT (JFM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles L. Ryan, | |
| Defendant. | |

Plaintiff Adrian Crihalmean brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles L. Ryan (Doc. 15). Defendant moves to dismiss the action for failure to exhaust administrative remedies (Doc. 32). Plaintiff opposes the motion (Doc. 40).

The Court will grant the motion and dismiss the action without prejudice.

**I.    Background**

Plaintiff initiated this lawsuit when he was a prisoner confined at the Arizona State Prison Complex-Florence South Unit (Doc. 1 at 1).[1] In his First Amended Complaint, Plaintiff challenged Arizona Revised Statute § 31-230, which allows ADC to collect a fee on all deposits into an inmate's "Spendable Account" ostensibly for the cost of maintaining inmate trust accounts, with the fees to be placed in a "Building Renewal Fund" (Doc. 15 at 3). Plaintiff stated that on June 6, 2010, a notice was posted informing inmates that as of July

---

[1] Plaintiff was released from prison on October 13, 2012 (Doc. 40 at 7; Doc. 42).

20, 2010, a 1% fee would be applied to all deposits (id.).  Plaintiff asserted that he is entitled to challenge the statute because he has a constitutionally protected property interest in monies deposited into his inmate account.  He alleged that the 1% fee is a taking in violation of the Fifth Amendment and violates due process (id. at 3A).

Defendant now moves to dismiss Plaintiff's claim on the ground that Plaintiff failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 32).

**II.    Exhaustion Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action.  See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  This exhaustion requirement applies only to those individuals who are prisoners at the time they file their lawsuit.  Talamantes v. Leyva, 575 F.3d 1021, 1024 (9th Cir. 2009); 42 U.S.C. § 1997e(h) (a prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, [or] sentenced for . . . violations of criminal law").  Although Plaintiff is no longer incarcerated, because his was a prisoner when he filed this action, his claim is subject to the exhaustion requirement.

Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).  A prisoner must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense.  Jones v. Bock, 549 U.S. 199, 212 (2007).  Thus, the defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  There can be no absence of exhaustion unless a defendant demonstrates that applicable relief remained available in the grievance process.  Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  And when considering disputed

1  issues of fact, a court has broad discretion as to the method used in resolving the dispute
2  because "there is no right of jury trial" as to an issue arising in a pre-answer motion. <u>Ritza</u>
3  <u>v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988)
4  (quotation omitted).

### III. Parties' Contentions

#### A. Defendant's Motion

In support of his motion, Defendant submits evidence that ADC provides a multi-step administrative grievance system including (1) an informal Inmate Letter, (2) a Formal Grievance, (3) an Inmate Grievance Appeal, and (4) a final appeal to the Director (Doc. 32 at 4-7, citing Department Order (DO) 802 at www.azcorrections.gov).

Defendant proffers copies of Plaintiff's grievance documents showing that he filed an Inmate Letter related to his claim on June 20, 2011 (<u>id.</u> at 10, Ex. A). The June 22, 2011 response to the Inmate Letter informed Plaintiff that his complaint was premature since the 1% fee did not go into effect until July 20, 2011, and Plaintiff had not yet been adversely affected (<u>id.</u>). The evidence also includes Plaintiff's June 27, 2011 Inmate Grievance appealing this response; Plaintiff filed this as an emergency grievance and argued that his rights are going to be violated (<u>id.</u>). On June 29, 2011, Plaintiff's Inmate Grievance was returned "unprocessed" because the 1% fee was not in yet in effect and therefore had not affected Plaintiff (<u>id.</u>).

Defendant contends that Plaintiff's grievance was properly unprocessed because the 1% fee was not yet in effect; thus, his complaint was not ripe (<u>id.</u> at 10-11). Defendant further contends that there is no evidence that Plaintiff initiated another grievance related to his claim (<u>id.</u> at 11).

Defendant also asserts that any argument that Plaintiff's claim was not grievable under the ADC grievance procedures because it allegedly concerned an action of the state legislature fails because Plaintiff was not prevented from exhausting on the basis that his complaint concerned a legislative matter (<u>id.</u>).

- 3 -

**B.    Plaintiff's Response**[2]

Plaintiff points to the provision within DO 802 stating that "actions of the Governor and State Legislature" are not grievable under the ADC grievance procedures (Doc. 40 at 3, Ex. 3). Plaintiff notes that in his Motion to Dismiss, Defendant argues that the statute Plaintiff challenges—Arizona Revised Statute § 31-230—is a proper act of the Arizona Legislature instituted to raise funds for the Building Renewal Fund established under Arizona Revised Statutes § 41-797 (id. at 4, citing Doc. 32 at 2-3). Plaintiff asserts that his claim is that, even though § 31-230 was enacted by the legislature, it is not constitutionally valid (Doc. 40 at 4). Plaintiff maintains that it is well-settled, and Defendant confirmed in discovery documents, that § 31-230 is an act of the legislature (id. at 5). Plaintiff argues that under the PLRA, the prison determines what may or may not be grieved through its administrative remedies and, here, the ADC grievance system mandates that Plaintiff's complaint about § 31-230 was not grievable (id. at 5, 8).

In response to Defendant's contention that Plaintiff's complaint was not ripe and he had to wait until the policy was in effect, Plaintiff contends that regardless of when he attempted to grieve his claim, there was no available relief through the ADC grievance procedures (id. at 7).

**C.    Defendant's Reply**

Defendant replies that Plaintiff is not challenging § 31-230; rather, he is challenging ADC's implementation of the statute and its application to him (Doc. 41). According to Defendant, Plaintiff's complaint was in response to Director's Instruction (DI) 304, which implemented the fee, and DO 802 specifically provides that the ADC Inmate Grievance Procedure "is designed to address inmate complaints related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant including . . . Director's Instructions . . . " (id. at 2, citing DO 802.01 § 1.1). Defendant states that

---

[2] The Court issued the Notice required under Wyatt, 315 F.3d at 1120 n. 14, which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. 33).

1 Plaintiff did not have standing to challenge DI 304 as the policy did not yet "directly and 2 personally" affect him (id. at 3). They add that under Plaintiff's interpretation of the 3 legislative-action exception, any ADC act would be exempt from the grievance procedures 4 because the ADC is itself a statutory-created entity (id.).

## IV. Analysis

There are two questions presented regarding exhaustion: (1) whether Plaintiff's claim concerned a challenge to the "actions of the Governor or State Legislature" and was therefore exempt from the ADC Inmate Grievance Policy, and, if the claim was not exempt, (2) whether Plaintiff's Inmate Letter and Inmate Grievance were properly filed and the return of his grievance as "unprocessed" rendered remedies unavailable.

### A. Grievance Procedure Exception

The Court finds that, contrary to Defendant's assertion, Plaintiff's argument that his complaint concerned an action of the legislature and was therefore exempt from the ADC grievance procedure is not absurd. Indeed, the Court finds Plaintiff's argument to be based on a natural interpretation of that provision in the ADC grievance policy stating that "[a]ctions of the . . . State Legislature" "are not grievable under the Inmate Grievance Procedure" (Doc. 40, Ex. C, DO 802.01 §§ 1.2.1, 1.2.1). Presumably, this provision is not meaningless, and Plaintiff specifically alleges that an act passed by the State Legislature is not constitutionally valid.

Nevertheless, the exception does not apply here. Section 31-230 states that:

> The director may establish by rule a fee for any deposits made to a prisoner spendable account. The director shall deposit, pursuant to §§ 35-146 and 35-147, any monies collected pursuant to this subsection in the department of corrections building renewal fund established by § 41-797.

Ariz. Rev. Stat. § 31-230(D). The statute does not *require* the director to implement a fee or to set the fee at 1%; rather, the language is discretionary. Pursuant to this discretionary authority, Defendant implemented a 1% fee on all deposits to inmate accounts. Thus, the State Legislature did not establish the 1% fee that Plaintiff challenges; it is actually Defendant's action in establishing the fee that Plaintiff challenges. Because the DI 304 memorandum that notified inmates of the fee stated only that it will be charged on any

- 5 -

1 deposits "pursuant to ARS 31-230," it was not unreasonable for Plaintiff to believe that the
2 fee was imposed by the legislature and not by Defendant.

3 The Court finds that because the language in the statute is discretionary and not
4 mandatory, Plaintiff's claim concerning the 1% fee falls outside of "actions of the State
5 Legislature," and, for this reason, his complaint was grievable under the ADC grievance
6 procedure.

### B. Exhaustion

8 A defendant must show that administrative remedies were available and unused.
9 Albino v. Baca, --- F.3d ----, 2012 WL 4215918, at *8 (9th Cir. Sept. 21, 2012); see Sapp
10 v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) ("the PLRA therefore does not require
11 exhaustion when circumstances render administrative remedies 'effectively unavailable'")
12 (internal quotation omitted). To show that remedies were available, the defendant "must
13 demonstrate that pertinent relief remained available, whether at unexhausted levels of the
14 grievance process or through awaiting the results of the relief already granted as a result of
15 that process." Brown, 422 F.3d at 936-37. Relevant evidence demonstrating whether relief
16 remained available includes official directives explaining the review process and
17 "information provided to the prisoner concerning the operation of the grievance procedure
18 in this case, such as the response memoranda in these cases." Id. at 937. The information
19 provided to the prisoner is especially pertinent "because it informs our determination of
20 whether relief was, as a practical matter, 'available.'" Id.

21 Here, Defendant points to that section of the ADC grievance policy limiting
22 grievances to issues related to institutional life or conditions of confinement "that directly
23 and personally affect[] the inmate grievant" (Doc. 32 at 5, citing DO 802.01 § 1.1). Because
24 the DI 304 memorandum was already posted and announced that the 1% fee was established
25 and set to go into effect the following month (as opposed to a proposed fee that may or may
26 not be implemented in the future), it may not have been clear that Plaintiff's complaint could
27 not yet be addressed by the ADC grievance process. However, the applicability of the
28 grievance system was clarified through the response memoranda to Plaintiff's Inmate Letter

1 and Inmate Grievance, which specifically informed him that he had to wait to grieve his
2 complaint until the 1%-policy was in effect and affected him (Doc. 32, Ex. A).  To qualify
3 for an exception to the exhaustion requirement, Plaintiff must show that this response and
4 the return of his grievance as "unprocessed" were inconsistent with or unsupported by the
5 ADC grievance regulations.  See Sapp, 623 F3d at 823-24.  Plaintiff fails to point to any
6 provision within DO 802 that is inconsistent with the grievance response that he had to wait
7 until the policy was in effect and "personally and directly" affected him.

8 Even assuming that the response was not supported by the ADC grievance policy,
9 and that Plaintiff should have been able to grieve his complaint about the fee before it went
10 into effect, the mistake did not render administrative remedies effectively unavailable.  Cf.
11 Id. at 823 (if prison officials screen out an inmate's appeal for improper reasons, and inmate
12 cannot pursue the requisite sequence of appeals, administrative remedies are unavailable);
13 Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (the plaintiff's failure to exhaust
14 excused where the warden's mistake rendered administrative remedies effectively
15 unavailable).  The grievance response did not in any way suggest that Plaintiff's complaint
16 was not grievable or that no relief was available; it simply delayed the time he could file his
17 grievance by a few weeks.

18 The record shows that, despite prison officials' instructions that his grievance was
19 premature, Plaintiff did not submit a grievance after the July 20, 2011 effective date or after
20 the fee was imposed on a deposit into his account.  Thus, when administrative remedies
21 were available, he did not attempt to use them.  See Albino, 2012 WL 4215918, at*8, 12 (an
22 inmate must make a reasonable, good faith effort to comply with the grievance procedures).
23 The only explanation for not subsequently filing a grievance is Plaintiff's assertion that it
24 did not matter when he attempted to grieve because there was no relief by way of the ADC
25 grievance process (Doc. 40 at 7).  But this does not suffice; exhaustion is required even
26 when a prisoner seeks relief not available in the grievance proceedings.  Booth, 532 U.S. at
27 741.
28

In sum, Plaintiff was required to grieve his complaint about the 1% fee and his failure to do so as instructed by prison officials constitutes a failure to exhaust. Defendant's Motion to Dismiss will be granted. Dismissal for nonexhaustion is without prejudice; therefore, Plaintiff may file a new complaint in federal court alleging the same subject matter. Wyatt, 315 F.3d at 1120.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion to Dismiss (Doc. 32).

(2) Defendant's Motion to Dismiss (Doc. 32) is **granted**; the First Amended Complaint is dismissed without prejudice for failure to exhaust administrative remedies.

(3) The Clerk of Court must enter judgment of dismissal accordingly.

DATED this 24th day of October, 2012.

James A. Teilborg
United States District Judge